IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JUSTIN E. RIDDLE and ERIN M. RIDDLE,<br><br>Plaintiffs,<br><br>vs.<br><br>CHARTERWEST BANK, a Nebraska Corporation, and FEDERAL RESERVE BANK OF KANSAS CITY,<br><br>Defendants. | 8:18-CV-17<br><br>MEMORANDUM AND ORDER |

This case is based on the denial of a residential home loan for property in Omaha, Nebraska. Filing 1-1 at 2. The plaintiffs, Justin and Erin Riddle, were the prospective borrowers, and CharterWest Bank was the prospective lender. *See* filing 1-1 at 2. Generally, the Riddles allege they tried to withdraw their application to switch to another lender, and that CharterWest wrongfully retaliated against them by quickly denying their application and falsely reporting the denial to the Federal Housing Administration (FHA) as "denied due to unpaid child support." Filing 1-1 at 2, 8.

Before the Court are motions to dismiss filed by CharterWest (filing 13) and the Federal Reserve Bank of Kansas City (filing 7). CharterWest's motion will be granted in part and denied in part, and the Federal Reserve's motion will be granted in its entirety.

I. BACKGROUND

As of April and May 2016, the Riddles and CharterWest were engaged in the process of gathering the documentation necessary for an FHA home

loan. *See* filing 1-1 at 19, 21-22, 35-37. But an issue arose out of Justin's child support obligation. Filing 1-1 at 3. Pursuant to a child custody order, Justin's ex-wife legally had sole custody of their daughter. Filing 1-1 at 4. But due to circumstances that prevented Justin's ex-wife from exercising custody, the two had come to an informal arrangement whereby their daughter lived with Justin, and his ex-wife arranged every few months to clear his accrued child support arrearage. Filing 1-1 at 4.

The Riddles' mortgage loan officer, Grant Whitehead, explained in a May 12, 2016 email to Justin that because child support liens have priority over new liens, including mortgages, "this needs to be addressed prior to closing or paid at closing." Filing 1-1 at 4, 24. Justin replied, explaining the situation and offering further evidence if required. Filing 1-1 at 4, 25; *see* filing 1-1 at 39. In an email the next day, Justin told Whitehead that his ex-wife would provide a notarized statement waiving his child support obligation, and clear his balance. Filing 1-1 at 4, 26.

At the same time, Justin was generally frustrated with CharterWest, believing that Whitehead had been rude to him and that CharterWest was being deliberately difficult. *See* filing 1-1 at 4, 27. So, on May 12, he sent an email explaining his dissatisfaction and advising CharterWest that if they could get their deal closed by May 18, then the Riddles would work with CharterWest; otherwise, the Riddles would "take [their] approval to a different lender" and expect a refund of CharterWest's fees. Filing 1-1 at 4, 27. Later that day, Justin emailed asking for a copy of the Riddles' file. Filing 1-1 at 28. Whitehead promised to email the documents. Filing 1-1 at 29.

On May 13, the Riddles contacted Whitehead's manager, Gary Walters, and said they no longer wanted to deal with Whitehead. Filing 1-1 at 5. The Riddles contacted another lender and provided their file. Filing 1-1 at 5. On

May 16, at 4:13 p.m., Justin emailed CharterWest asking for his FHA case number so he could transfer to the other lender. Filing 1-1 at 31. At 4:17 p.m., Gary Walters at CharterWest sent Justin a letter informing him that CharterWest would "not be able to approve" the Riddles' loan. Filing 1-1 at 33-34. The letter advised that the loan was a "higher risk" according to the FHA underwriting system, and that

> Child Support is not paid as agreed. The decree we have states you are to pay monthly $417. We noted the payment history but it does not match the decree and therefore translates into delinquent payments. We would need something from the court documenting the agreement you have to pay accordingly to the history. We CANNOT just take your word for it. It does not work that way on FHA loans. If we cannot get anything then we can submit it without it but it will hurt your chances for approval.

Filing 1-1 at 34. The letter further advised that the Riddles would need at least 2 months of house payments in reserve in their checking account, and that 2015 tax transcripts would be required. Filing 1-1 at 34. (These requirements appear to be contrary to earlier representations from Whitehead that only a 1 month reserve would be necessary. Filing 1-1 at 35.)

The Riddles proceeded with their new lender, but were informed by the new lender that there was a problem: their loan could not be approved because on May 17, CharterWest had "put a credit reject code in the comments section in the system" indicating that their loan application had been denied because of unpaid child support. Filing 1-1 at 6. On June 16, the Riddles contacted Walters and asked that the credit reject code be removed because (1) CharterWest should not have denied their loan after they

withdrew their application and (2) they had provided all the child support documentation CharterWest had asked for. Filing 1-1 at 7. They also provided Walters with documentation that child support had been waived and no support was owed. Filing 1-1 at 7, 38-41. Walters replied refusing the Riddles' request. Filing 1-1 at 7, 42. Justin asked Walters to explain how CharterWest's decision to deny the loan had been made without the information that had been requested, and Walters again stated that only a court order waiving Justin's child support obligation would have been satisfactory. Filing 1-1 at 7, 44. Justin asked Walters to show when a court order was requested of them. Filing 1-1 at 7, 45. Walters did not respond. Filing 1-1 at 7.

The Riddles emailed Walters and the bank branch manager indicating their intent to appear at the branch in the morning with their documentation. Filing 1-1 at 8, 46. They were met by sheriff's deputies who said that CharterWest had reported a threat, and were directed to leave the property. Filing 1-1 at 8. The Riddles lodged complaints with the FHA and Consumer Financial Protection Bureau, which were referred to the Federal Reserve's consumer affairs department. Filing 1-1 at 10. The Federal Reserve rejected the Riddles' complaint. *See* filing 1-1 at 10-11.

The Riddles sued CharterWest in Douglas County District Court, on September 13, 2017, asserting claims for breach of fiduciary duty, tortious interference with a business relationship, and fraud. Filing 15 at 3-5. CharterWest moved to dismiss pursuant to Neb. Ct. R. Pldg. § 6-1112(b)(6), and the district court entered an "Order of Dismissal Without Prejudice" on November 8, dismissing the Riddles' complaint without prejudice and granting leave to file an amended complaint within 14 days. Filing 15 at 6-8.

The Riddles did not file an amended complaint within 14 days. Instead, on December 13, they filed a new complaint asserting the same claims and some new ones, including the Federal Reserve as a new defendant. Filing 1-1. On January 16, 2018, the Federal Reserve removed the complaint to this Court. Filing 1. On January 30, CharterWest filed its motion to dismiss (filing 14). On February 2, the Douglas County District Court entered a "Nunc Pro Tunc Order of Dismissal Without Prejudice" which again dismissed the complaint without prejudice, but omitted the language allowing leave to file an amended complaint. Filing 20-1.

## II. STANDARD OF REVIEW

A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The complaint need not contain detailed factual allegations, but must provide more than labels and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For the purposes of a motion to dismiss a court must take all of the factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Id.*

And to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6),[1] a complaint must also contain sufficient factual matter, accepted as true, to

---

[1] CharterWest also bases its motion to dismiss on Rule 12(b)(1), arguing that the Court "is without jurisdiction based on res judicata." Filing 13 at 1; filing 14 at 3. But res judicata, of course, is not a jurisdictional matter. *Seldin v. Seldin*, 879 F.3d 269, 272 (8th Cir. 2018); *see Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005). So, the Court cannot grant a Rule 12(b)(1) motion based on res judicata. *Seldin*, 879 F.3d at 272.

state a claim for relief that is plausible on its face. *Iqbal,* 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief. *Id.* at 679.

Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id.* The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *See Twombly,* 550 U.S. at 545. The court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Id.* at 556.

When deciding a motion to dismiss under Rule 12(b)(6), the Court is normally limited to considering the facts alleged in the complaint. If the Court considers matters outside the pleadings, the motion to dismiss must be converted to one for summary judgment. Fed. R. Civ. P. 12(d). However, the Court may consider exhibits attached to the complaint and materials that are necessarily embraced by the pleadings without converting the motion. *Mattes v. ABC Plastics, Inc.,* 323 F.3d 695, 697 n.4 (8th Cir. 2003). Documents necessarily embraced by the pleadings include those whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading. *Ashanti v. City of Golden Valley,* 666 F.3d 1148, 1151 (8th Cir. 2012). The Court may also take notice of public records. *Levy v. Ohl,* 477 F.3d 988, 991 (8th Cir. 2007).

## III. DISCUSSION

The Riddles' complaint asserts six claims for relief: (1) breach of fiduciary duty; (2) tortious interference with a business relationship; (3) fraud; (4) violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*; (5) "willful noncompliance"; and (6) conspiracy. CharterWest and the Federal Reserve each move to dismiss the complaint. *See* filing 8 at 3-11; filing 14 at 10-18. The Court will consider their arguments separately.

### 1. CHARTERWEST

As noted, CharterWest argues that the Riddles' claims are insufficiently pled. Filing 14 at 10-18. But initially, the Court must address CharterWest's argument that the Riddles' claims are barred by res judicata. *See* filing 14 at 3-7.

#### (a) Res Judicata

*Res judicata*, or claim preclusion, operates to preclude a party from relitigating the same cause of action. *Lundquist v. Rice Mem'l Hosp.*, 238 F.3d 975, 977 (8th Cir. 2001). As the Eighth Circuit has explained,

> [c]laim preclusion applies when there is a prior judgment rendered by a court of competent jurisdiction, that prior judgment was final and on the merits, and it involved the same cause of action and the same parties or privies. Res judicata bars claims that were or could have been litigated in the earlier proceeding, but it does not apply to claims that did not exist when the first suit was filed.

*Wedow v. City of Kansas City*, 442 F.3d 661, 669 (8th Cir. 2006) (citations omitted). Federal courts must give preclusive effect to state court judgments, and the scope of the preclusive effect is governed by law of the state from which the prior judgment was rendered—here, Nebraska law. *See*, *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 539 F.3d 809, 821 (8th Cir. 2008).

Under Nebraska law, *res judicata* bars the relitigation of the same cause of action so long as (1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment was a final judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions. *Hara v. Reichert*, 843 N.W.2d 812, 816 (Neb. 2014). The obvious question here is whether the former judgment against the Riddles was on the merits.

For purposes of *res judicata*, a judgment on the merits is one which is based on legal rights, as distinguished from mere matters of practice, procedure, jurisdiction, or form. *Kerndt v. Ronan*, 458 N.W.2d 466, 469-70 (1990). And it is true that a judgment of dismissal based on the failure of a claimant to state a cause of action may be considered a judgment on the merits, even where by amendments a good cause of action might be stated. *Cole v. Clarke*, 641 N.W.2d 412, 416 (Neb. Ct. App. 2002).

But a dismissal "without prejudice" is not a judgment on the merits for purposes of *res judicata*. *Jamie N. v. Kenneth M.*, 867 N.W.2d 290, 298 (Neb. Ct. App. 2015); *see Durousseau v. Neb. State Racing Comm'n*, 231 N.W.2d 566, 570 (Neb. 1975). "A dismissal without prejudice means that another petition may be filed against the same parties upon the same facts as long as it is filed within the applicable statute of limitations." *Jamie N.*, 867 N.W.2d at 298 (citing *Dworak v. Farmers Inc. Exch.*, 693 N.W.2d 522 (2005)). And

here, the state court's order was expressly "without prejudice." Filing 15 at 8; filing 20-1.² There's no way to interpret that as a judgment on the merits for purposes of *res judicata*—and even if there was, "if a previous judgment is ambiguous as to whether the judgment was on the merits, the doctrine of res judicata is inapplicable." *Kerndt*, 458 N.W.2d at 471.

A party relying on a judgment as the basis for application of the doctrine of *res judicata* has the burden to prove that the prior judgment was an adjudication on the merits. *Id.* at 469. CharterWest has not carried that burden here.

### (b) The Riddles' Claims

Because the Riddles' claims are not barred by *res judicata*, the Court considers whether they have pled claims upon which relief may be granted. In doing so, the Court is mindful of the proposition that a document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, shall be held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

### *(i) Fiduciary Duty*

The Riddles' first claim is that CharterWest breached a fiduciary duty to them. Filing 1-1 at 13. CharterWest argues that it did not owe the Riddles a fiduciary duty. Filing 14 at 10. The Court agrees.

---

² The Court notes the omission of leave to file an amended complaint in the district court's "nunc pro tunc" order. Filing 20-1. The Court has serious reservations about the district court's authority to enter an order "nunc pro tunc" materially altering the provisions of its original order. *See Fay v. Dowding, Dowding & Dowding*, 623 N.W.2d 287, 295 (Neb. 2001). But regardless, the "nunc pro tunc" order did not change the important part of the order, which is that it provides (twice) that the dismissal is "without prejudice." Filing 20-1.

A fiduciary duty arises out of a confidential relationship which exists when one party gains the confidence of the other and purports to act or advise with the other's interest in mind. *Gonzalez v. Union Pac. R.R. Co.*, 803 N.W.2d 424, 446 (Neb. 2011). In a confidential or fiduciary relationship in which confidence is rightfully reposed on one side and a resulting superiority and opportunity for influence are thereby created on the other, equity will scrutinize the transaction critically. *Id.* But superiority of bargaining power alone does not create a fiduciary duty, because there must also be an opportunity to exercise undue influence. *Id.*

But Nebraska law presumes that "ordinarily the relationship between a bank and a customer imposes no fiduciary duty upon the bank." *McCormack v. Citibank, N.A.*, 100 F.3d 532, 540 (8th Cir. 1996) (cleaned up). So, in *Bloomfield v. Neb. State Bank*, the Nebraska Supreme Court rejected a borrower's fiduciary duty claim against his lender bank, finding "no evidence that in this debtor-creditor relationship there was an opportunity to influence." 465 N.W.2d 144, 149 (Neb. 1991). There was also no evidence relating to a disparity of bargaining power between the parties, or that a special relationship existed between the parties besides that of debtor-creditor. *Id.* Accordingly, the Court found that the debtor had "failed as a matter of law in establishing a breach of any fiduciary relationship." *Id.*

The presumption against a banker-customer fiduciary relationship can be rebutted when (1) a customer who is in a position of inequality, dependence, weakness, or lack of knowledge reposes trust or confidence in his or her banker and (2) the relationship results in the bank's dominion, control, or influence over the affairs of the customer. *McCormack*, 100 F.3d at 540 (citing *Chase v. Deneau*, No. A-91-1015, 1993 WL 70947, at *2 (Neb. Ct. App. Mar. 16, 1993)). But the Riddles have alleged no facts here suggesting "a

position of inequality, dependence, weakness, or lack of knowledge relative to" CharterWest. *See id*.

The existence of a fiduciary duty and the scope of that duty are questions of law for a court to decide. *Gonzalez,* 803 N.W.2d at 446; *see McCormack,* 100 F.3d at 541. The facts alleged here do not support the existence of a fiduciary duty. Accordingly, the Court will dismiss this claim.

### *(ii) Tortious Interference*

Next, the Riddles claim that CharterWest tortiously interfered with a business relationship by coding the denial of their loan such that they had difficulty obtaining another loan. Filing 1-1 at 13. To succeed on a claim for tortious interference with a business relationship or expectancy, a plaintiff must prove (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted. *Midland Properties, L.L.C. v. Wells Fargo, N.A.*, 893 N.W.2d 460, 465 (Neb. 2017).

CharterWest offers a number of one-sentence arguments as to why the Riddles don't state a claim:

> However [the] Riddles did in fact get another loan to allow them to purchase [the home]. [The] Riddles do not claim that the business relationship with [their new lender] existed nor that it existed at the time of the loan processing by Charter West. Moreover, Charter West was absolutely privileged to report the results of the Riddles' loan application and such required

reporting cannot form the basis for a claim for tortious interference with contract.

Filing 14 at 11.

But, to begin with, CharterWest does not direct the Court to any factual support for the proposition that the Riddles were able to obtain another home loan. *See* NECivR 7.1(a)(2)(A) ("[a] factual assertion in the motion and the supporting brief must cite to the pertinent page of the pleading, affidavit, deposition, discovery material, or other evidence on which the moving party relies"). The Court assumes that CharterWest is inferring a subsequent loan from the Riddles' prayer for relief, which seeks damages based on interest rate increases that became effective "before loan approval was possible." Filing 1-1 at 15. That, however, does not tell the Court who the lender was, or on what terms a loan might have been obtained. Perhaps the Riddles will be unable to prove "a breach or termination of the relationship." *See Pettit v. Paxton*, 583 N.W.2d 604, 609-10 (Neb. 1998); *see also Forest Prod. Indus., Inc. v. ConAgra Foods, Inc.*, 460 F.3d 1000, 1002 (8th Cir. 2006). But they have sufficiently pled one.

CharterWest's argument that the Riddles did not plead that "the business relationship with [their new lender] existed nor that it existed at the time of the loan processing by Charter West[,]" filing 14 at 11, is quickly dealt with: Yes, they did. The Riddles' pleading quite plainly alleges that they were dealing with their new lender, and informed CharterWest that they intended to switch to another lender, before CharterWest denied their loan and made the credit note that is the subject of this litigation. That's enough, at the pleading stage, to allege both the existence of a business relationship or expectancy and CharterWest's knowledge of the relationship or expectancy.

Finally, CharterWest asserts that its report was "absolutely privileged" such that its "so-called interference" was not "unjustified." Filing 14 at 11. CharterWest does not identify the basis for this privilege, and the Court can only assume that CharterWest is referring to the privilege for truthful information. *See Thompson v. Johnson*, 299 Neb. 819, 829 (2018); *Recio v. Evers*, 771 N.W.2d 121, 132-33 (Neb. 2009). It is true that a person cannot incur liability for interfering with a business relationship by giving truthful information to another. *Recio*, 771 N.W.2d at 137; *see Thompson*, 299 Neb. at 829. But that simply poses the question whether the information noted here, in CharterWest's credit reporting, was truthful. The Riddles allege that it wasn't, and that CharterWest knew that. And that's sufficient to at least state a claim for relief.

### *(iii) Fraud*

The Riddles' next theory is fraud: they assert that CharterWest "misrepresented the action they took with respect to the Plaintiffs loan application when it reported "APPLICATION DENIED DUE TO UNPAID CHILD SUPPORT" to the FHA database . . . with the knowledge that this action would prevent any other lender from issuing a loan on the property in question." Filing 1-1 at 13-14. That, CharterWest contends, is insufficient to state a claim for fraud. Filing 14 at 11-13. The Court agrees.

To recover on a fraudulent misrepresentation claim under Nebraska law, a party must show: (1) that a representation was made; (2) that the representation was false; (3) that when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) that it was made with the intention that it should be relied upon; (5) that the party reasonably did so rely; and (6) that he or she suffered damage as a result. *Agri Affiliates, Inc. v. Bones*, 660 N.W.2d 168, 175 (Neb.

2003). And here, while the Riddles have alleged that CharterWest knowingly made a false representation, they have not alleged that CharterWest intended *them* to rely on the alleged misrepresentation, that they relied on it, or that their damages resulted from such reliance.

### *(iv) Fair Credit Reporting Act*

Next, the Riddles assert a claim under the FCRA. Filing 1-1 at 14. Their theory is a little difficult to parse—the complaint primarily refers to an alleged failure to send an "adverse action letter" upon denial of their loan application. *See* filing 1-1 at 14. They also allege that CharterWest violated the FCRA by "fraudulently denying and improperly coding an application that had been withdrawn before any decision was made." Filing 1-1 at 14. And they refer to "Regulation B," which the Court assumes is referring to 12 C.F.R. § 1002.2(c), which defines an "adverse action" for purposes of credit reporting.

CharterWest's primary argument is that, while furnishers of credit information have a duty to provide accurate information to a credit reporting agency, § 1681s-2(a), Congress did not create a private right of action to enforce that duty, § 1681s-2(d). Filing 14 at 13 (citing *Mitzel v. HSBC Card Servs., Inc.*, No. 8:10-CV-392, 2011 WL 2848716, at *3 (D. Neb. July 15, 2011)). That's true—in fact, Congress expressly precluded such actions. *See* § 1681s-2(d). So, the Riddles cannot sue CharterWest under the FCRA for, allegedly, making a false statement in credit reporting.

There are other provisions of the FCRA that may permit private enforcement. For instance, the theory the Riddles seem to be relying on is the private right of action against businesses that use consumer credit reports but do not provide the "adverse action" notice required by § 1681m(a). *See* §§ 1681n(a) and 1681o(a); *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 52-53

(2007). But that requirement is in play when a lender denies an application in reliance on a consumer credit report, and here, no such reliance is alleged: CharterWest did not deny the Riddles' loan application based on information from a consumer credit report. There is also a disclosure requirement for adverse action based on information from third parties, but that simply requires that the lender "disclose the nature of the information to the consumer" upon written request from the consumer. There seems to be little dispute here that CharterWest disclosed the nature of the information supporting denial of the Riddles' loan when the denial was made.

There may also be a private right of action against entities like CharterWest that provide information to credit reporting agencies, *if* the provider of information has been given notice of a dispute and failed to investigate the accuracy of the reported information. *See Ilodianya v. Capitol One Bank USA NA*, 853 F. Supp. 2d 772, 774 (E.D. Ark. 2012) (collecting cases). But the requirement that a provider of information investigate a dispute depends on the provider receiving notice of the dispute from the *credit reporting agency*. *See* § 1681s-2(b); *see also* § 1681i(a)(2). In other words, the FCRA sets up a process: a lender that denies credit to a consumer based on a credit report must notify the consumer why credit was denied, and tell the consumer how to contact the credit reporting agency. § 1681m(a). The consumer may then dispute any information contained in his or her file with the credit reporting agency. § 1681i(a)(1). The credit reporting agency must then reinvestigate the information, notifying the information provider about the dispute. § 1681i(a)(2). And the information provider then has a duty to investigate the dispute. § 1681s-2(b). But there is no allegation here that the information provider, *i.e.* CharterWest, had its duty to investigate triggered by notice of a dispute from a credit reporting agency.

In sum, to the extent that the Court can parse the Riddles' FCRA claim, the Court is aware of no private right of enforcement supporting a civil claim under the FCRA on the facts they allege. Accordingly, the Court will dismiss their FCRA claim.

### *(v) "Willful Noncompliance"*

The Riddles' next claim is for "willful noncompliance": they allege that CharterWest was told it had erred in denying the Riddles' loan based on "child support" but had "refused to correct the illegal denial, despite having evidence proving that the denial was in fact inaccurate." Filing 1-1 at 14. It is not obvious at first glance what the Riddles' "willful noncompliance" claim is alleging noncompliance *with*. But the Court's best guess is that the Riddles are referring to § 1681n of the FCRA, which provides civil liability for "willful noncompliance" with any requirement imposed under § 1681 *et seq.*[3]

That said, as explained above, the Court can find no requirement of the FCRA that is privately enforceable and fits the facts. Accordingly, this claim will be dismissed as well.

### *(vi) Conspiracy*

Finally, the Riddles assert a "conspiracy" claim—they assert that "[m]ultiple persons at [CharterWest] had input and knowledge of this situation" and that they "created a criminal scheme to both harm the [Riddles], and fraudulently report false information to an agency of the United States government." Filing 1-1 at 15. It is not clear whether this

---

[3] And, the Court notes, CharterWest's brief in support of its motion to dismiss also treats this claim as an FCRA claim. Filing 14 at 15. So, the Riddles had an opportunity to correct any misapprehension about the legal basis for this claim, and they haven't asserted anything different. *See* filing 17.

purported conspiracy is asserted under state or federal law. But the Riddles have failed to state a conspiracy claim regardless.

To begin with, under state law, a civil conspiracy is a combination of two or more persons to accomplish by concerted action an unlawful or oppressive object, or a lawful object by unlawful or oppressive means. *Salem Grain Co., Inc. v. Consol. Grain & Barge Co.*, 900 N.W.2d 909, 923 (Neb. 2017). A "conspiracy" is not a separate and independent tort in itself, but, rather, is dependent upon the existence of an underlying tort. *Id.* at 924. But there is only one underlying tort sufficiently alleged here: tortious interference with a business expectancy. And in proving conspiracy to tortiously interfere with a business relationship, a claim of civil conspiracy is not actionable in itself, but serves to impose vicarious liability for the underlying tort of those who are a party to the conspiracy. *Hatcher v. Bellevue Volunteer Fire Dep't*, 628 N.W.2d 685, 696 (Neb. 2001).

In other words, a "civil conspiracy" is essentially a method for imposing joint and several liability on all actors who committed a tortious act or any wrongful acts in furtherance of the conspiracy. *Salem Grain Co.*, 900 N.W.2d at 924. And the Riddles haven't sued anyone at CharterWest—they've only sued CharterWest. So, because their conspiracy claim isn't independently actionable, and they've only sued CharterWest, their conspiracy claim is wholly coextensive with their tortious interference claim.

The claim fares no better under federal law. To the extent the Riddles might be trying to allege a claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*, premised on supposed fraud, they've failed to meet the particularity requirements of Fed. R. Civ. P. 9(b). *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 408 (8th Cir. 2017); *see also Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d

1003, 1010, 1014 (8th Cir. 2015); *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011). Nor have they alleged facts from which the Court could infer a criminal scheme existing over a long period of time in connection with more than one victim. *See Terry A. Lambert Plumbing, Inc. v. W. Sec. Bank*, 934 F.2d 976, 980-81 (8th Cir. 1991); *see also Stonebridge Collection, Inc. v. Carmichael*, 791 F.3d 811, 823-24 (8th Cir. 2015); *Rolfes v. MBNA Am. Bank, N.A.*, 416 F. Supp. 2d 745, 753-54 (D.S.D. 2005).

Furthermore, under state law, a corporation cannot conspire with an agent when the agent is acting within the scope of his or her authority. *Koster v. P & P Enterprises, Inc.*, 539 N.W.2d 274, 279 (Neb. 1995). In order to claim conspiracy, a plaintiff must plead in the petition that the corporate officials were acting outside the scope of their authority or other than in the normal course of their duties. *Id.* Similarly, under federal law, there is no unlawful conspiracy when officers within a single corporate entity consult among themselves and then adopt a policy for the entity. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017).

> Conspiracy requires an agreement—and in particular an agreement to do an unlawful act—between or among two or more separate persons. When two agents of the same legal entity make an agreement in the course of their official duties, however, as a practical and legal matter their acts are attributed to their principal. And it then follows that there has not been an agreement between two or more separate people.

*Id.* Nothing alleged here suggests that the conduct of CharterWest's employees—even if tortious—is not wholly attributable to CharterWest.

In sum, the Court cannot discern a factual basis for a civil conspiracy, and will dismiss that claim.

## 2. FEDERAL RESERVE

Having discussed the Riddles' claims in detail as they are asserted against CharterWest, the Court can deal with their claims as to the Federal Reserve more summarily. Each claim that fails against CharterWest also fails against the Federal Reserve, for the same reasons. And the Riddles' tortious interference claim, which does state a claim as to CharterWest, does not do so as to the Federal Reserve, because the Riddles allege no facts suggesting that the Federal Reserve did anything to tortiously interfere with the Riddles' subsequent attempts to get a home loan.

The Riddles have, in fact, alleged nothing with respect to the Federal Reserve that supports any of the claims they assert. To the extent that they've alleged facts relating to the Federal Reserve, it's that the Federal Reserve didn't properly investigate their consumer complaints. Even if the Federal Reserve was assumed to be a state actor, *but see Scott v. Fed. Reserve Bank of New York*, 704 F. Supp. 441, 446-47 (S.D.N.Y. 1989), the Riddles have not alleged a "conscience-shocking disregard of [their] complaints" or constitutional rights, *see Villanueva v. City of Scottsbluff*, 779 F.3d 507, 513 (8th Cir. 2015). Nor have they alleged facts supporting a duty under state law. *See Bartunek v. State*, 666 N.W.2d 435, 439-40 (Neb. 2003); *see also Casa de Cambio Comdiv, S.A. De C.V. v. Fed. Reserve Bank of Minneapolis*, 115 F.3d 618, 620–21 (8th Cir. 1997).

Accordingly, the Court will dismiss the Riddles' claims against the Federal Reserve in their entirety.

## IV. CONCLUSION

As explained above, the Court will dismiss all the Riddles claims against the Federal Reserve. The Court will dismiss all the Riddles' claims against CharterWest except one: tortious interference with a business relationship. The Riddles may, or may not, be able to ultimately *prove* their tortious interference claim, but they have sufficiently alleged it,[4] so that claim may proceed. The Riddles' fiduciary duty, fraud, FCRA, "willful noncompliance," and conspiracy claims against CharterWest are dismissed.

IT IS ORDERED:

1. The Federal Reserve's motion to dismiss (filing 7) is granted.

2. The Federal Reserve is terminated as a party.

3. CharterWest's motion to dismiss (filing 13) is granted in part and in part denied, as set forth above.

Dated this 8th day of May, 2018.

BY THE COURT:

John M. Gerrard
United States District Judge

---

[4] And, the Court observes, the Riddles will almost certainly be unable to prove damages in the amounts they've alleged, *see* filing 1-1 at 15, and they would be well-advised to revise their expectations in that regard. Punitive damages aren't available. See *O'Brien v. Cessna Aircraft Co.*, 903 N.W.2d 432, 458 (Neb. 2017).