IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JUSTIN E. RIDDLE and ERIN M. RIDDLE,<br><br>Plaintiffs,<br><br>vs.<br><br>CHARTER WEST BANK, a Nebraska Corporation,<br><br>Defendant. | 8:18-CV-17<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the parties' cross-motions for summary judgment. Filing 94; filing 97. The Court finds that the plaintiffs' remaining claim—tortious interference with a business relationship or expectancy—fails because the plaintiffs failed to present evidence they were damaged by the defendant's allegedly tortious conduct. Accordingly, the Court will grant summary judgment for the defendant and dismiss the complaint.

FACTUAL BACKGROUND

The defendant, Charter West Bank, is a Nebraska corporation that, among other things, processes mortgage loan applications including Federal Housing Authority (FHA) loans. Filing 99 at 1-2.[1] The plaintiffs, Justin and

---

[1] Pursuant to NECivR 56.1, a party moving for summary judgment must include in its brief a statement of material facts about which the movant contends there is no dispute, and the party opposing summary judgment must include in its brief a concise response to that statement of facts, noting any disagreement. Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response. NECivR 56.1(b)(1).

Erin Riddle, submitted a Uniform Residential Loan Application (URLA) to Charter West, intending to purchase a home. Filing 99 at 2.

One of the questions on the URLA asked whether either of the Riddles was obligated to pay child support. Filing 100-1 at 3. They said they weren't. Filing 100-1 at 3. But, in fact, Justin was. Filing 100-3 at 2-3. Charter West obtained records from the Nebraska Department of Health and Human Services reflecting that Justin's child support was in arrears. Filing 100 at 3; filing 100-4.[2]

The events that follow aren't really disputed, although the sequence of events is. On May 16, 2016, Justin asked Charter West for a copy of the Riddles' file, and their FHA case number, to transfer the loan request. Filing 94-1; filing 100-8. And at some point, Charter West denied the Riddles' loan application. Filing 100 at 3. Charter West claims that was on May 16. Filing 100 at 3. But the "Credit Denial Date" on Charter West's entry into FHA Connection records, reflecting the denial, is "05/17/16." Filing 100-7.

Charter West claims that the Riddles never "withdrew" their loan application, so Charter West denied it. Filing 99 at 5. The Riddles' version of events is that Charter West should have stopped processing their loan after they indicated they wanted to transfer it, but proceeded to deny it instead. *See* filing 107 at 3. But regardless, on May 19, Charter West was asked by Freedom Lending to transfer the Riddles' FHA case number. Filing 100-10 at 2-3. Charter West transferred the case and the Riddles' FHA appraisal, completing the transfer by May 23 (which was two business days later). Filing 100-10 at 1-2; filing 100-11.

---

[2] Although Justin was technically in arrears, it appears that he had an informal arrangement with his ex-wife regarding child support, and he'd been living up to that arrangement—it just wasn't always reflected in the official records. *See* filing 100-9; filing 107-1.

- 2 -

The Riddles eventually completed another URLA for Freedom Lending and obtained financing. Filing 100-12; filing 100-14; filing 100-15. They successfully purchased the home they'd been trying to buy. Filing 100-13.

The Riddles sued Charter West, asserting six claims for relief: (1) breach of fiduciary duty; (2) tortious interference with a business relationship; (3) fraud; (4) violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*; (5) "willful noncompliance"; and (6) conspiracy. Filing 1-1. The Court dismissed all of those claims except tortious interference with a business relationship as to Charter West. Filing 21. It's that claim that's now the basis for the parties' motions for summary judgment.

## STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must

cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## DISCUSSION

To succeed on a claim for tortious interference with a business relationship or expectancy, a plaintiff must prove (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted. *Thompson v. Johnson*, 910 N.W.2d 800, 806-07 (Neb. 2018); *see W. Plains, L.L.C. v. Retzlaff Grain Co. Inc.*, 870 F.3d 774, 782 (8th Cir. 2017). But here, there's no evidence that the Riddles were damaged.

Specifically, there's no evidence that "any wrongful act *induced or caused a breach or termination of the relationship*" between the Riddles and their new lender. *See Pettit v. Paxton*, 583 N.W.2d 604, 609 (Neb. 1998). As the Nebraska Supreme Court has observed, "when the defendant's interference is directed toward the third party, with whom the plaintiff has contracted, and the interference did not cause the third party to breach the contract, it is difficult to conceive how the plaintiff would prove causation." *Id*. at 610.

For instance, in *Pettit*, the plaintiffs were purchasers of property who sued other prospective buyers for allegedly interfering with the plaintiffs'

purchase, by fomenting disagreement among the shareholders of the corporation selling the property. *Id.* at 606-07. But the plaintiffs had, in the end, *successfully* completed the purchase. *Id.* at 608. While the plaintiffs claimed to have paid more for the property as a result of the defendants' conduct, they had failed to prove that their alleged loss was caused by the defendants. *See id.* at 610.

The Riddles' claim fares no better. They claim that by making an allegedly inaccurate entry into FHA Connection records, Charter West "made it IMPOSSIBLE for [them] to proceed with their business relationship with Freedom Lending until the incorrectly coded case number expired, and a new one was issued." [Filing 107 at 5](). But the Riddles have identified no damages resulting from the delay. *Cf.* [*Pettit*, 583 N.W.2d at 610-11](). And the Riddles' argument on this point is worth quoting at length, precisely because of what it *doesn't* say:

> [The Riddles] would also like to point out to the Court that if Mr. Riddle was not as persistent and sincere as he was, the previous homeowners of [the home the Riddles purchased] would not have agreed to the situation the way they did. It took several months and several attempts to convince the homeowners to rent the house to the [Riddles], and after two additional parties had attempted to purchase the property but ran into their own complications. It was also with a Guarantee from the [Riddles] that they would resolve it quickly. . . . It was only due to the same persistence and resolve that [Justin] has demonstrated with the legal process that the Riddles ultimately were successful in securing the property.

Filing 107 at 6. Justin is to be commended for his persistence in the purchase process; it is one of the primary reasons that the Riddles successfully complete the purchase of their home. Nonetheless, missing from the Riddles' argument above—and from the record—is any basis for concluding that the Riddles were actually damaged.

As they admit, they successfully consummated their relationship with Freedom Lending. And even if there was some basis to claim consequential damages based on delay, or the terms of their eventual agreement—which is hard to square with *Pettit*—there would still be no evidence of *pecuniary* loss. *See Pettit*, 583 N.W.2d at 610 (quoting Restatement (Second) of Torts § 766 (1979)); *Omaha Min. Co. v. First Nat. Bank of Bellevue*, 415 N.W.2d 111, 114 (Neb. 1987); *see also Retzlaff Grain*, 870 F.3d at 788-89; *Recio v. Evers*, 771 N.W.2d 121, 134 (Neb. 2009).

Accordingly, the evidence fails the Riddles on an essential element of their only remaining claim. So, the Court will obviously deny the Riddles' motion for summary judgment, and will grant Charter West's motion for summary judgment.

IT IS ORDERED:

1. The Riddles' motion for summary judgment (filing 94) is denied.

2. Charter West's motion for summary judgment (filing 97) is granted.

3. The Riddles' complaint is dismissed.

4. A separate judgment will be entered.

Dated this 1st day of April, 2019.

BY THE COURT:

*John M. Gerrard*
John M. Gerrard
Chief United States District Judge